UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| SOP SERVICES, INC., ) | | |
| BEAR ARCHERY, INC., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| vs. ) | | |
| ) | | |
| VITAL HUNTING GEAR, INC., ) | | |
| ABBAS BEN AFSHARI, ) | | |
| ) | | |
| Defendants. ) | 3:11-cv-00112-RLY-WGH | |
| ) | | |
| _____ ) | | |
| ) | | |
| ABBAS BEN AFSHARI, ) | | |
| ) | | |
| Counter Claimants, ) | | |
| ) | | |
| vs. ) | | |
| ) | | |
| BEAR ARCHERY, INC., ) | | |
| ESCALADE INCORPORATED, ) | | |
| JACK  BOWMAN, ) | | |
| ) | | |
| Counter Defendants. ) | | |

**ENTRY ON CLAIM CONSTRUCTION**

Bear Archery, Inc., and Vital Hunting Gear, Inc., are direct competitors in the sale

of fiber optic sights and arrow rests in the archery industry.  Bear Archery and SOP

1

Services, Inc.[1] filed a complaint against Vital Hunting Gear and Ben Afshari, the owner and President of the same, for trademark infringement of Bear Archery's WHISKER BISCUIT trademark and for patent infringement based upon patents owned by Bear Archery related to fiber wrapped archery bow sights.  After Afshari allegedly accused representatives of Bear Archery that its Revolution® Arrow Rest violated United States Patent No. 6,948,488 ("the '488 patent"), of which Afshari is the sole named inventor, Bear Archery and SOP Services amended their complaint to add a claim for declaratory judgment against Afshari personally, seeking a declaration that Bear Archery's Revolution Arrow Rest does not infringe Afshari's '488 patent.  Afshari thereafter filed a counterclaim against Bear Archery, its manufacturer and distributor, Escalade Incorporated, and its Vice President, Jack Bowman, alleging that Bear Archery's Revolution® Arrow Rest infringes his patent.

Bear Archery asks the court to construe five terms found in independent claim 25 and dependent claim 30 of the '488 patent. Afshari, pro se, asks the court to construe two terms found in independent claim 25 of the '488 patent.  This Entry provides the court's construction of those contested terms.

## I.      Background of the Invention

The purpose of an arrow rest is to hold the arrow in position and to support the arrow until the arrow is fired.  Traditional arrow rests suffered from the fact that, when fired, the arrow shaft or its fletchings were prone to contact the rest, thereby deflecting

---

[1] According to the parties' Case Management Plan, SOP Services is a holding company which owns certain intellectual property rights exclusively licensed to Bear Archery.

the arrow from its target. Accordingly, an improvement called a "fall away" arrow rest was eventually developed. At full draw, the arrow rest and the arrow are raised into a firing position; when the bow is released, the arrow rest falls quickly down and out of the path of the arrow.

The '488 patent, entitled "Shaft Clamping Arrow Rest," is a type of "fall away" arrow rest. It addresses a problem inherent to these "fall away" rests — that being, the arrow falling off prematurely due to a sudden movement of the bow or due to an archer's decision not to shoot after the bow has been in full draw. ('488 patent, col. 2, ll:45-51). The '488 patent addresses this problem by utilizing a "clamping mechanism that grasps the shaft of the arrow when the support arm is in the resting position." (*Id.*, col. 3, ll:28-31). "As the support arm moves to the pre-launch position, the clamping mechanism releases the shaft of the arrow so that the arrow can be freely launched from the support arm without interference from the clamping mechanism." (*Id.*, col. 3, ll:32-35). Conversely, "[a]s the support arm moves from the pre-launch position to the resting position, the clamping mechanism closes relative to the support arm so as to be able to grasp the shaft of an arrow." (*Id.*, col. 3, ll:38-41).

## II. The Law of Claim Construction

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The purpose of claim construction is to determine the meaning and scope of the claims that are the subject of an infringement action. *02 Micro Int'l Ltd. v.*

*Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). When the parties raise a genuine dispute regarding the proper scope of an asserted patent claim, the court resolves the dispute as a matter of law. *Id*.

The claim construction process "'begins and ends in all cases with the actual words of the claim.'" *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)). In the absence of a contrary intent, the words in a claim are given their ordinary and customary meaning from the perspective of one of ordinary skill in the pertinent art at the time of the invention. *Phillips*, 415 F.3d at 1313; *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("[A] court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms."). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed claim appears, but in the context of the entire patent, including the specification" and the prosecution history. *Id*.; *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1303, 1312-13 (Fed. Cir. 2005).

The Federal Circuit describes the patent specification as "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The patent specification may "act[] as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id*. (citing *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995)). The court may not, however, read limitations from the specification into the claims absent a

4

clear intention by the patentee to do so. *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1255-56 (Fed. Cir. 2012) (citing *Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002)).

In addition, other claims of the patent "can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314. "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id*.

Lastly, if necessary, the court may examine extrinsic evidence to assist in determining the meaning of the disputed claim language. *Vitronics*, 90 F.3d at 1584. Extrinsic evidence, such as expert testimony, inventor testimony, and dictionaries, "may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language." *Id*. The Federal Circuit explained that "[u]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Phillips*, 415 F.3d at 1319 (quoting *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995)).

**III.  The Court's Claim Construction**

Independent claim 25, from which claim 30 depends, reads as follows:

25.   An **apparatus** for supporting an arrow relative to a bow, comprising:

**a mounting member** for coupling to a bow;

>an arrow rest coupled to said mounting member and being **moveable relative thereto between a first resting position and a second resting position**, said arrow rest configured for supporting a shaft of an arrow relative thereto;
>
>**at least one shaft retaining member coupled to said arrow rest** and extending above the shaft of the arrow when said arrow rest is in said first resting position for preventing the shaft of the arrow from falling from said arrow rest when said arrow rest is in said first resting position, **said at least one shaft retaining member being biased away from the shaft of an arrow**; and
>
>**a linkage mechanism coupled between said arrow rest and a cable of a bow for actuating said arrow rest between said first resting position and said second position**.

Bear Archery moves for construction of the following claim terms from independent claim 25 (indicated in bold above): (1) "moveable thereto between a first resting position and a second position"; (2) "at least one shaft retaining member coupled to said arrow rest"; (3) "said at least one shaft retaining member being biased away from the shaft of an arrow"; (4) "a linkage mechanism coupled between said arrow rest and a cable of a bow for actuating said arrow rest between said first reading position and a second position"; and, from dependent claim 30: (5) "a biasing member for biasing said pivotable member relative to said mounting member." Afshari moves for construction of two terms in claim 25 (also in bold): (6) "a mounting member" and (7) "apparatus".

### A. *moveable thereto between a first resting position and a second position*

| Bear Archery | Afshari |
|---|---|
| capable of moving from a first resting (i.e., non-firing) position to a second raised pre-launch position. | that portion of arrow rest with built in arrow retaining member that moves from 1st to 2nd position |

The disputed claim language, "moveable thereto between a first resting position and a second position," is found in the second full clause of claim 25. The parties agree that the claimed "first position" is a "resting position," but disagree on the meaning of "second position." Bear Archery's interpretation of the claim term "second position" is based upon the embodiments described in the specification. For example, the first embodiment shown, in Figs. 1A-3, is described as showing, "the distal end of a clamping arrow rest . . . in accordance with the principles of the present invention . . . in a first resting position (Fig. 2A) and a second pre-launch position (Fig. 2B"). ('488 patent, col. 7, ll:47-51). Similarly, in a second embodiment, shown in Fig. 4, the arrow rest is described as "clamping the shaft of an arrow relative thereto and releasing the shaft of the arrow when the arrow is in a position to be launched." (*Id*., col. 8, ll: 46-50).

Afshari argues that "[i]f Bear Archery believes that one of these position [sic] must be prelaunch position, then Revolution Arrow Rest incorporates this position." (Resp. at 16). The issue before the court is claim construction. Afshari's arguments regarding Bear Archery's alleged infringement of the '488 patent is not only premature, but improper, as the "claims may not be construed with reference to the accused device." *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002); *see also Vitronics*, 90 F.3d at 1581-82 (noting that a patent infringement analysis involves two steps; first, claim construction and second, "a determination as to whether the accused . . . product infringes the asserted claim as properly construed").

Afshari also argues that claim 25 does not limit the second position's "whereabouts." (Resp. at 16). For example, the second position could be "(up-down),

7

(open-close), (pivot up-pivot down), (circle in circle out), (at rest-prelaunch), (prelaunch-down) and many other combinations." (*Id*.). Afshari does not cite the court to any portion of the intrinsic evidence to support this new construction or to refute Bear Archery's construction. To the extent Afshari is attempting to assert that the arrow rest can move to some second position other than a raised, pre-launch position, Afshari's proposed construction must be rejected. The '488 patent does not describe or teach any "second position" other than the raised pre-launch firing position.

Accordingly, the court construes "moveable relative thereto between a first resting position and a second position" as "capable of moving from a first lowered non-firing position to a second raised pre-launch position."

      B.    at least one shaft retaining member coupled to said arrow rest

| Bear Archery | Afshari |
|---|---|
| a shaft retaining member and a separate arrow rest are "coupled", meaning they are fastened, linked, or associated together, either directly or indirectly | the shaft retaining member and the arrest rest are "joined together" |

Bear Archery's support for its construction of "at least one shaft retaining member coupled to said arrow rest," found in the third full clause of claim 25, is found in the specification of the '488 patent. As taught in Fig. 2A and Fig. 3, the shaft retaining member is a wholly separate piece linked such that the shaft retaining member can move relative to the arrow rest. For example, the first and primary embodiment, depicted in Figs. 1A-3, includes a clamping member that is "rotably coupled to" the base portion indirectly with "a threaded fastener 164 that extends through the clamping member 162

8

and threadedly engages the arm 152." ('488 patent, col. 7, ll:54-55, col. 8, ll:37-40). The arrow supporting member 156 is in turn attached to arm 152. Other embodiments, *see*, *e.g.* Fig. 4, of the invention feature the clamping member as a separate piece from the arrow rest and linked with the arrow rest.

Afshari, the named inventor of the '488 patent, originally agreed that the term "coupled to" should be construed to mean "2 or more items joined together." (Docket # 82, Ex. B). He later changed his mind, contending now, in reliance on the dictionary meaning of "couple," that "coupled to" means "joined in one piece" as in an "injection molding process." (*See* Docket # 86 at 22-25). Afshari's proposed construction is not supported by the specification nor his own dictionary definition, which reflects that "couple" means "something that joins or connects two things together; a link." (*Id*. at 23 (citing *Webster's Dictionary*, but failing to include edition or page number)).

Accordingly, the court construes "at least one shaft retaining member coupled to said arrow rest" to mean "a shaft retaining member and a separate arrow rest are 'coupled,' meaning they are fastened, linked, or associated together, either directly or indirectly."

### C. said at least one shaft retaining member being biased away from the shaft of an arrow

| Bear Archery | Afshari |
|---|---|
| the shaft retaining member [is] biased [relative to the arrow rest] away from the shaft of an arrow | that portion of the apparatus that retains the shaft of the arrow [sic] moves out of the way of the arrow by force |

The disputed claim language is also found in the third clause of claim 25:

9

>   at least one shaft retaining member coupled to said arrow rest and extending above the shaft of the arrow when said arrow rest is in said first resting position for preventing the shaft of the arrow from falling from said arrow rest when said arrow rest is in said first resting position, **said at least one shaft retaining member being biased away from the shaft of an arrow**;

The clause discloses two elements that are coupled together: a shaft retaining member and an arrow rest. The function of the shaft retaining member is to hold the shaft of the arrow in place so as to prevent it from falling from the arrow rest. The challenge here is to determine what is meant by the term "biased."

Bear Archery's construction is supported by the intrinsic evidence. As argued by Bear Archery, the specification describes a bias of the shaft retaining member relative to something else. For example, the specification's description of the distal end of an arrow rest as depicted in Figs. 2A and 2B, provides that the arrow rest 100 includes "a pivotable clamping member 106 that is rotably coupled to the base portion 104 and biased relative to the base portion 104 in a direction to encourage rotation of the clamping member 106 from its position shown in Fig. 2A [closed] to its position in Fig. 2B [open]." ('488 patent, col. 7, ll: 51-57). Moreover, in Fig. 3, a cross-sectional side view of an arrow rest arm, a coil spring is mounted on a threaded fastener between the arrow rest/supporting member and the clamping/shaft retaining member:

>   A biasing member 166, such as a coil spring, is positioned on the shaft of the threaded fastener 164 and biases the clamping member 162 relative to the supporting member 156, to encourage clamping of the shaft of an arrow relative to the supporting member 156.

10

(*Id.*, col. 8, ll:41-45). In this manner, the "biasing member," a coil spring, provides the force necessary to "encourage clamping of the shaft of the arrow relative to the supporting member." (*Id.*).

Finally, for the shaft retaining member to be biased, it only makes sense mechanically if there are two separate pieces arranged so that the shaft retaining member is biased relative to something else — here, the arrow rest.

Afshari proposes that the claim term should mean "that portion of the apparatus that retains the shaft of the arrow [sic] moves out of the way of the arrow by force." (Docket # 82, Ex. A). Afshari does not support his construction with any citation to the intrinsic evidence. Moreover, Afshari's proposed construction fails to explain how "moves" defines "biased" relative to something else. Instead, as noted above, he attempts to construe the claim in light of the accused product. *NeoMagic Corp.*, 287 F.3d at 1074.

Accordingly, the court construes "said at least one shaft retaining member being biased away from the shaft of an arrow" as "the shaft retaining member [is] biased [relative to the arrow rest] away from the shaft of an arrow."

> **D.  a linkage mechanism coupled between said arrow rest and a cable of a bow for actuating said arrow rest between said first resting position and said second position**

| Bear Archery | Afshari |
|---|---|
| an elastic cord, cable, or adjustable length member which transmits a pulling force to cause the arrow rest to rise from its first resting position to its second pre-launch position as the bow is drawn | a connection device connecting the arrow rest to the cable of a bow by joining them together, as the cable of the bow moves, the movement activates an action from position 1 to position 2 |

The disputed claim language is the final clause of claim 25. Bear Archery contends that a "linkage mechanism" "for actuating" the arrow rest should be construed using "means-plus-function" language. In general terms, a "means-plus-function" claim recites a "means" for performing a precisely stated function, but does not identify any particular structure, material, or acts of the claimed invention. The statute provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. Thus, the scope of a means-plus-function claim is strictly limited to the "corresponding structure, material or acts" described in the specification, and equivalents" of that structure. *Id.*; *Mettler-Toledo, Inc. v. B-Tek Scales LLC*, 671 F.3d 1291, 1296 (Fed. Cir. 2012) ("[A] 'means-plus-function' claim limitation is limited to the structures disclosed in the specification and equivalents."); *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("The 'means' term in a means-plus-function limitation is essentially a generic reference for the corresponding structure disclosed in the specification.") (quoting *Chiuminatta Concrete Concepts v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998))).

The disputed clause is presumptively not subject to "means-plus-function" treatment because it does not use the term "means." *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006) (citation omitted). "However, a limitation lacking the term 'means' may overcome the presumption against means-plus-function treatment if 'the claim term fails to recite sufficiently definite structure or else

12

recites functions without reciting sufficient structure for performing that function.'" *Id.* (internal quotation marks and citation omitted). The presumption against means-plus-function treatment "is a strong one" that may only be overcome by a "showing that the limitation essentially is devoid of anything that can be construed as structure." *Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1374 (7th Cir. 2012). Thus, the court "will not apply §112, ¶ 6 if the limitation contains a term that 'is used in common parlance or by persons of skill in the pertinent art to designate structure.'" *Id.* (quoting *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359 (Fed. Cir. 2004)). Bear Archery contends the presumption is rebutted because the clause at issue recites function without reciting sufficiently definite structure to perform that function.

"[T]he generic term 'mechanism' standing alone may connote no more structure than the term 'means.'" *Id.* (quoting *Mass. Inst. of Tech.*, 492 F.3d at 1354). However, "claim language further defining the mechanism can add sufficient structure to avoid a § 112, ¶ 6 construction." *Id.*

Here, the term "linkage" modifies "mechanism," and is the only term in that clause that could impart any structure. The only designated evidence submitted bearing on the definition of the term "linkage" is Bear Archery's *Merriam-Webster's Dictionary* definition of the term "linkage": "(1): the manner or style of being united;" "(2): the quality or state of being linked" or "(3): a system of links." (Docket # 82, Ex. D). This term, alone or in combination with the term "mechanism," fails to impart structure.

In response to Bear Archery's claim construction, Afshari alleges that "[a]ll persons in the ordinary art of archery know what a linkage is when it is used as a link

between the fall away arrow rest and the cables of the bow." (Resp. at 29). There are two problems with this statement. First, it is not supported by any facts or evidence of record. Second, to simply state that the term "linkage" has meaning when "used as a link" does nothing to clarify the meaning of "linkage." In sum, Afshari presents no evidence that the term "linkage mechanism" has a well-understood structural meaning in the art of archery. *Flo Healthcare*, 697 F.3d at 1374.

      The court therefore finds that one of skill in the art would read "a linkage mechanism . . . for actuating said arrow rest between said first resting position and said second position" as "a linkage *means* . . . for actuating said arrow rest between said first resting position and said second position." The court's construction is supported by Figure 15 of the '488 patent, which the patent describes as "an alternative embodiment of a *means for linking* the arrow rest of the present invention to the cable system of a bow in accordance with the principles of the present invention." ('488 patent, col. 4, ll:54-57) (emphasis added). Accordingly, the construction of a "linkage mechanism" is limited to the structural embodiments disclosed in the patent specification and equivalents thereof. *Mettler-Toledo, Inc.*, 671 F.3d at 1296.

      The specification of the '488 patent speaks of the following structures associated with the terms "means for linking," "linkage mechanism," "linkage device," "linkage member," and "linkage," which the patent uses somewhat synonymously with one another:

    (1)    an elastic cord 66 mounted to a post 70 or threaded fastener on a cable slide 50 ('488 patent, Fig. 1C, col. 6, ll:66 – col. 7, l: 10);

14

> (2) a cable 506 or 602 secured to a cable slide 500 or 600 (*id.*, Figs. 7-9, col. 10, ll:3-39);
>
> (3) an adjustable length linkage member with a cable slide (*id.*, Figs. 9-10, col. 10, ll:47-52); or
>
> (4) a linkage cable attached with a clamping device to a bow cable span (*Id.*, Fig. 15, col. 12, ll:6-11).

The specification teaches that the "linkage mechanism" is pulled due to a transaction of a cable slide or bow cable as the bow is drawn, and accordingly it transmits a pulling force to the arrow rest, such that the pulling force causes the arrow rest to rise to its second pre-launch position. The court therefore finds that the claim term "a linkage mechanism coupled between said arrow rest and a cable of a bow for actuating said arrow rest between the first resting position and said second position" encompasses only (1) an elastic cord, cable, or adjustable length member, which (2) transmits a pulling force to cause the arrow rest to rise from its first resting position to its second pre-launch position as the bow is drawn.

### E. a biasing member for biasing said pivotable member relative to said mounting member

| Bear Archery | Afshari |
|---|---|
| one or more coil springs positioned between the pivotable member and the mounting member to return the arrow rest to its first resting position | the one member of the apparatus that rotates in relation to the mounting member |

Dependent claim 30 requires "a biasing member for biasing said pivotable member relative to said mounting member." To better understand the terms used in claim 30, it is necessary to read dependent claims 26 and 28:

15

  26. The apparatus of claim 25, further comprising an elongate shaft rotably coupled to the mounting member and attached to the arrow rest whereby rotation of said elongate shaft causes pivotal movement of said arrow rest relative to said mounting member.

  28. The apparatus of claim 25, further comprising a pivotable member fixedly attached to said shaft and coupled to said linkage mechanism whereby movement of said linkage mechanism causes rotation of said pivotable member and rotation of said shaft relative to said mounting member.

As noted by Bear Archery, the claim term "a biasing member for biasing" recites no structure. The term "member" is too generic to impart structure. *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed.Appx. 697, 703 (Fed. Cir. 2008) ("The generic terms 'mechanism,' 'means,' 'element,' and 'device' typically do not connote sufficiently definite structure." (internal quotations and citation omitted)). The term "biasing" is the only other term that could provide structure, but, as used in the patent, the term is purely functional. The court must therefore construe this claim limitation in accordance with 35 U.S.C. § 112, ¶6.

The function of a biasing member is explained in the '488 patent specification as, "The second biasing member 30 is provided to cause arm 34 to move to the resting position as shown where the cable slide 50 is also in the resting position." ('488 patent, Fig. 1C, col. 7, ll:24-27). The description of a "biasing member" for accomplishing this function is found in column 7, lines 22-47, where the "biasing member" is described as being "one or more coil springs" and "engag[ing] the posts 68 and 72 to create a bias between the mounting bracket 24 and the pivotable member 28. The spring force of the second biasing member [is configured] . . . to pull the cable slide toward the riser as the

16

cable is released when launching an arrow," thereby returning the arrow rest to its first resting position. (*Id.*, col. 7, ll: 22-47). Afshari provides no meaningful response against this construction. Accordingly, the court finds the claim term "a biasing member for biasing said pivotable member relative to said mounting member" means "one or more coil springs positioned between the pivotable member and the mounting member to return the arrow rest to its first resting position."

  F.  **a mounting bracket/mounting member**

| Bear Archery | Afshari |
|---|---|
| the term does not need construction | a bracket and not 2 or 3 or 4, [sic] a mounting member cant [sic] be another bow or another device with a [sic] many parts of it's [sic] own |

Bear Archery noted that the term "a mounting bracket" does not appear in the claims asserted by Afshari. In his response, Afshari now asserts that he meant for the court to construe the term "mounting member" in claim 25. In relevant part, the claim provides, "An apparatus for supporting an arrow relative to a bow, comprising: a mounting member for coupling a bow."

Citing no evidence in support of his proposed construction, Afshari contends that the term should be construed as "a bracket and not 2 or 3 or 4," and that "a mounting member cant [sic] be another bow or another device with a [sic] many parts of it's [sic] own." (Docket # 86 at 32).

The term "mounting member" is modified by the transitional term "comprising," "which is synonymous with 'including,' 'containing,' or 'characterized by,' [and] is

17

open-ended and does not exclude additional, unrecited elements or method steps." *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004) (quoting MPEP, 8th ed., rev. 1 § 2111.03 (2003)); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."). Consequently, claim 25's requirement of a "mounting member" requires that any device have at least one mounting member. Afshari's attempt to limit his claim to only a single mounting member, and no more, is contrary to its appearance in claim 25 after the transitional term "comprising."

Bear Archery contends the term does not need to be construed because its ordinary meaning as understood by one of ordinary skill in the art is "readily apparent," and thus, its construction "involves little more than the application of the widely accepted meaning" of those "commonly understood words." *Phillips*, 415 F.3d at 1314. The court agrees with Bear Archery, and finds that the term "mounting member" needs no construction.

G. apparatus

| Bear Archery | Afshari |
|---|---|
| the term does not need construction | a fall away arrow rest with built in arrow retaining member capable of moving out of the way of the fletching of the arrow that is linked to cables of a bow with a linkage mechanism, this fall away arrow rest includes a bracket which is used to mount the fall away arrow rest to the riser of the bow either above the cable guard or below the cable guard location of the riser of the |

|  | bow |
|--|-----|

Afshari asks the court to construe the term as noted above because "it is absolutely necessary for the court and the jury and a person in the art to understand that the apparatus isn't a sight or stabilizer or some other accessory for the bow." (Docket # 86 at 33). A plain reading of claim 25, which requires "an arrow rest" and "a shaft retaining member," ensures that the claimed apparatus is not an archery sight or a bow stabilizer. In short, the court agrees with Bear Archery, and finds that the term "apparatus" needs no construction.

## IV. Conclusion

The purpose of this order is to construe the claims placed in issue, and more specifically, the terms highlighted by the parties. This being done, the parties may proceed accordingly with the underlying infringement suit.

**IT IS SO ORDERED** this 5th day of June 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically To Registered Counsel of Record.