UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

SOP SERVICES, INC., )
BEAR ARCHERY, INC., )
 )
               Plaintiffs, )
 )
               vs. )
 )
VITAL HUNTING GEAR, INC., )
ABBAS BEN AFSHARI, )
 )
               Defendants. )    3:11-cv-00112-RLY-WGH
 )
_____ )
 )
ABBAS BEN AFSHARI, )
 )
               Counter Claimant, )
 )
               vs. )
 )
BEAR ARCHERY, INC., )
ESCALADE INCORPORATED, )
JACK BOWMAN, )
 )
               Counter Defendants. )

**ENTRY ON BEAR ARCHERY'S MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY AND NON-INFRINGEMENT OF U.S. PATENT NO. 6,948,488
AND INFRINGEMENT OF U.S. PATENT NOS. 7,159,325 and 7,343,686**

      Bear Archery, Inc., and Vital Hunting Gear, Inc. ("VHG"), are direct competitors

in the sale of fiber optic sights and arrow rests in the archery industry. On September 12,

1

2011, Bear Archery and SOP Services, Inc.[1] filed a Complaint against VHG for trademark infringement of Bear Archery's WHISKER BISCUIT trademark and for patent infringement based upon patents owned by Bear Archery related to fiber wrapped archery bow sights. After VHG's officer and principle operator, Abbas Ben Afshari, accused representatives of Bear Archery that its Revolution® Arrow Rest violated United States Patent No. 6,948,488 ("the '488 patent"), of which Afshari is the sole named inventor, Bear Archery and SOP Services amended their complaint to add a claim for declaratory judgment against Afshari individually, seeking a determination of non-infringement and invalidity. Afshari thereafter filed a counterclaim against Bear Archery, its manufacturer and distributor, Escalade Incorporated, and its Vice President, Jack Bowman, alleging that Bear Archery's Revolution® Arrow Rest infringes his '488 patent.

In the midst of these filings, on February 22, 2012, Bear Archery sought and received a default judgment and permanent injunction against VHG, and VHG ceased operations. Bear Archery then filed a Second Amended Complaint, adding patent infringement and trademark infringement counts individually against Afshari.

Bear Archery now moves for entry of summary judgment that: (1) VHG's archery bow sights infringe both the '325 and '686 patents; (2) Bear Archery's Revolution Arrow Rest does not infringe the asserted claims of Afshari's '488 patent; and (3) the asserted claims of the '488 patent are invalid. For the reasons set forth below, the court **GRANTS** Bear Archery's motion.

---

[1] According to the parties' Case Management Plan, SOP Services is a holding company which owns certain intellectual property rights exclusively licensed to Bear Archery.

**I.      Discussion**

      **A.      Bear Archery's Claim of Infringement**

Bear Archery accuses Afshari of inducing VHG to infringe the '325 and '686 patents through the manufacture and sale of archery sight models (the "Accused Sights"). The Accused Sights include: Angular Single Pin, Profix, Pro*GUARD, Compromiser, CamelBACK Pendulum, HollowPino, Vertical Single Pin, STAR*PRO, ProSLIDE, StarTRACK, GloGlide, Triangle, Quad Angle, Pentagon, Tracker 3, Tracker 4, Tracker 5, PinHEAD (including 3, 4, 5, 6, and 10 models), Victory, Spike, and Amplify. They are depicted in the 2007, 2008, 2009, and/or 2011 VHG catalogs.  (*See* Plaintiffs' Exs. H-K). To find a party liable for inducing infringement, it must first be established that there was an actual infringement. *Akamai Tech., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012).  Second, it must be established that the inducing party advised, encouraged, or otherwise induced others to engage in infringing conduct. *Id.*  Bear Archery moves for summary judgment only with respect to the first element, actual infringement.  "To prove direct [or actual] infringement, the plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).  "'Literal infringement requires that each and every limitation set forth in a claim appear in an accused product.'" *Id*. (quoting *Franks Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004)).

For purposes of simplifying this motion, Bear Archery focuses on claim 24 of the '325 patent and claim 1 of the '686 patent. Claim 24 of the '325 patent provides:

> 24. A bow sight having a front and a back side, the bow sight comprising: a generally circular shaped piece defining a viewing opening through which a target can be viewed;
>
> a light gathering cable having an end defining a sight point that is visible when an archer peers through the viewing opening from the front side of the bow sight, the light gathering cable including a wrapped portion extending at least half-way around the generally circular shaped piece;
>
> and a pin that supports the light gathering cable adjacent to the sight point to hold the sight point in place.

('325 patent, col. 8, ll:58-col. 9, ll:1-2).

Claim 1 of the '686 patent provides:

> 1. An archery aiming device comprising: a bow sight that defines a viewing opening through which a target can be viewed, the bow sight having a front side and a back side; a first light gathering member having an end defining a first sight point that is visible when an archer peers through the viewing opening from the front side of the bow sight, the first light gathering member including a wrapped portion positioned at a first wrap location of the sight, the wrapped portion of the first light gathering member extending at least half-way around the viewing opening.

('686 patent, col. 6,ll: 62-col. 7,ll: 1-4).

### 1. The VHG Profix Sight

VHG's Profix sight is shown on page 3 of the 2011 VHG Catalog. (Plaintiffs' Ex. L; Deposition of Abbas Ben Afshari ("Afshari Dep.") at 82). In his deposition, Afshari admits that the Profix sight contains each and every element of the claims at issue. (Afshari Dep. at 85, 87-88, 95-96). In the absence of any evidence to the contrary, the court finds VHG's Profix sight infringes Bear Archery's '325 and '686 patents.

In addition, Afshari admits that the Angular Single Pin, Star TRACK, ProSLIDE, Compromiser, Star*PRO, Pro*GUARD, CamelBACK, Pendulum, HollowPino, and GloGlide sights use the same housing arrangement as the Profix sight. (*Id*. at 96-105). The housing arrangement of the VHG sights is the portion of the sight which includes the infringing features. Accordingly, the Angular Single Pin, StarTRACK, ProSLIDE, Compromiser, Star*PRO, Pro*GUARD, CamelBACK Pendulum, HollowPino, and GloGlide sights also infringe.

### 2. The VHG PinHEAD Sight

The PinHEAD sight is shown on page 5 of the 2008 VHG Catalog. (Plaintiffs' Ex. M; Afshari Dep. at 107-08). Afshari admits that VHG's PinHEAD sight has structure which corresponds to the elements of claim 1 of the '686 patent and claim 24 of the '325 patent. (Afshari Dep. at 107-11). Afshari further admits that the Victory, Spike, and Amplify sights use the same housing arrangement as the PinHEAD sight. (*Id*. at 111-113). Accordingly, the Victory, Spike, and Amplify sights also infringe.

### 3. The VHG QuadANGLE Sight

VHG's QuadANGLE sight is shown on page 3 of the 2011 VHG Catalog. (Plaintiffs' Ex. N; Afshari Dep. at 114-15). Afshari admits that the QuadANGLE sight has structure which corresponds to the elements of claim 1 of the '686 patent and 24 of the '325 patent. (*Id*. at 117-18). Further, Afshari admits that the Angular Single Pin, Triangle, Pentagon, Tracker 3, Tracker 4, and Tracker 5 sights use the same housing arrangement as the QuadANGLE sight, with one housing used for each pin in a stacked

configuration. (*Id*. at 117-18). Accordingly, the Angular Single Pin, Triangle, Pentagon, Tracker 3, Tracker 4, and Tracker 5 sights also infringe.

### 4. The VHG Multi-Pin Sights

VHG sold sights having multiple pins in its Angular and PinHEAD families of sights. Bear Archery accuses VHG, under Afshari's direction and control, of infringing not only the claims identified above, but also claim 7 of the '325 patent. It reads:

> 7. An archery aiming device comprising:
>
> A bow sight that defined a viewing opening through which a target can be viewed, the bow sight having a front side and a back side;
>
> A first light gathering member having an end defining a first sight point that is visible when an archer peers through the viewing opening from the front side of the bow sight, the first light gathering member including a wrapped portion positioned at a first wrap location of the sight, the wrapped portion of the first light gathering member extending at least half-way around the viewing opening; and
>
> a second light gathering member having an end defining a second sight point that is visible when an archer peers through the viewing opening from the front side of the bow sight, the second light gathering member including a wrapped portion positioned at a second wrap location of the sight, the wrapped portion of the second light gathering member extending at least half-way around the viewing opening, the second wrap location being positioned rearward of the first wrap location.

('325 patent, col. 7, ll:33-53). Afshari's testimony confirms that the QuadANGLE sight contains the elements of claim 7. (Afshari Dep. at 115-18). In addition, Afshari either admitted or does not contest that the Triangle, Pentagon, Tracker 3, Tracker 4, Tracker 5, PinHEAD, Victory, Spike, and Amplify sights have comparable housing arrangement with multiple pins such that they too infringe claim 7 of the '325 patent. Accordingly, VHG's multiple-pin archery sights also infringe.

6

The court finds Bear Archery has established that VHG's archery bow sights infringe the '325 and '686 patents. It has thus established the first part of its claim that Afshari personally induced VHG to infringe Bear Archery's patents. The second part of Bear Archery's claim, that Afshari advised, encouraged, or otherwise induced others at VHG to engage in infringing conduct, remains to be addressed at trial.

### B.     Afshari's Claim of Infringement

Afshari accuses Bear Archery of infringing claims 25, 26, 28-30, and 32-36 (the "Asserted Claims") of the '488 patent. The '488 patent claims the combination of a "fall-away" arrow rest and a "shaft retaining member" which "prevent[s] the . . . arrow from falling from [the] rest." Independent claim 25, from which claims 26, 28-30, and 32-36 depend, provides:

> 25.    An apparatus for supporting an arrow relative to a bow, comprising:
>
> a mounting member for coupling to a bow;
>
> an arrow rest coupled to said mounting member and being moveable relative thereto between a first resting position and a second resting position, said arrow rest configured for supporting a shaft of an arrow relative thereto;
>
> *at least one shaft retaining member coupled to said arrow rest* and extending above the shaft of the arrow when said arrow rest is in said first resting position for preventing the shaft of the arrow from falling from said arrow rest when said arrow rest is in said first resting position, *said at least one shaft retaining member being biased away from the shaft of an arrow*; and
>
> a linkage mechanism coupled between said arrow rest and a cable of a bow for actuating said arrow rest between said first resting position and said second position.

In the court's Entry on Claim Construction, it construed the phrases of claim 25 which are shown in italics. The court construed "at least one shaft retaining member coupled to said arrow rest" to mean "a shaft retaining member and a separate arrow rest are 'coupled,' meaning they are fastened, linked, or associated together, either directly or indirectly." The court also construed "said at least one shaft retaining member being biased away from the shaft of an arrow" to mean "the shaft retaining member [is] biased [relative to the arrow rest] away from the shaft of an arrow." Thus, claim 25 requires two pieces: an arrow rest and a separate shaft retaining member, where the shaft retaining member is biased *relative to the arrow rest*.

Bear Archery's Revolution® arrow rest includes a pivoting launcher arm (A) having a forward end with an upward "U-shaped" portion (A1) which supports the arrow from below, and rearward end with a downward "U-shaped" portion (A2) which limits arrow movement, although normally without touching the shaft. (Declaration of Jack Bowman ¶ 6). Specifically, the forward end of the arm (A1) and the bowstring engage the arrow shaft to hold the arrow in place. (*Id*. ¶ 7). The rear end of the arm (A2) limits the distance the arrow shaft can move upwards or sideways in the event it begins to fall off the rest. (*Id*.). The launcher arm (A) with both of the "U-shaped" portions is formed of a single unitary piece. (*Id.* ¶ 8). Thus, even if the forward end and rearward end of the Revolution® arrow rest are considered to be the "arrow rest" and "shaft retaining member" within the meaning of claim 25, a one piece launcher arm is not two "separate" components. Accordingly, the Revolution® arrow rest does not literally infringe claim 25.

In addition, a "biased relative thereto" relationship requires that the two pieces must be moveable relative to one another, such as the relationship between the arrow rest (100) and shaft retaining member (106) shown in FIGS. 2A and 2B of the '488 patent. In the Revolution® arrow rest, the two end portions are immovable relative to one another, and thus, no biasing force exists. (*Id*. ¶ 9).

The court's findings apply equally to the remaining Asserted Claims, as they all depend from claim 25. Summary judgment that Bear Archery's Revolution® arrow rest does not infringe the Asserted Claims of the '488 patent is **GRANTED**.

### C. Invalidity Claims

Bear Archery asks the court to declare the Asserted Claims of the '488 patent are invalid as anticipated and/or obvious in light of prior art, pursuant to 35 U.S.C. §§ 102 and/or 103. The prior art includes: (1) the Golden Premier Fall-away rest, which was offered for sale by Golden Key Futura, Inc. as early as 2000, and (2) the QuikTune® fall-away arrow rest, which was offered for sale by New Archery Products, Inc. ("NAP") at least as early as January 1, 2002. (Declaration of Vincent Troncoso ("Troncoso Dec.") ¶ 11, Exs. B, C; Declaration of Robert Mizek ("Mizek Dec.") ¶ 7).

#### 1. Law of Anticipation

Title 35 U.S.C. § 102(b) states that a patentee shall be entitled to a patent unless:

> (a) the claimed invention was "described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention" or

    (b) if "the invention was . . . in public use or on sale in this country . . ." more than a year before the filing date of the patent application.

A claim not satisfying the novelty condition of patentability, as defined in § 102, is said to be "anticipated." *E.g., Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).

  A printed publication will anticipate a claim under § 102(b) only if "each and every [claim] limitation is found either expressly or inherently in a single prior art reference." *Id*. (quoting Celeritas *Techs. Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998)); *see also Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1083 (Fed. Cir. 2008) (A finding of anticipation "requires that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in the possession of the invention."). In other words, a printed publication must include all the "limitations," i.e., defining features of the claim, as those limitations are arranged in the claim. *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) ("Because the hallmark of anticipation is prior invention, the prior art reference – in order to anticipate under 35 U.S.C. § 102 – must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements as arranged in the claim." (internal quotation marks omitted)); *Sanofi-Synthelabo*, 550 F.3d at 1083 (same). Whether a printed publication is anticipatory is a question of fact. *In re Gleave*, 560 F.3d 1331, 1334-35 (Fed. Cir. 2009).

**2.     Analysis**

The '488 patent provides that it is a "[c]ontinuation of application No. 10/121,123, filed on Apr. 11, 2002, now Pat. No. 6,681,753." The priority or effective date of the '488 patent is, therefore, April 11, 2002. 35 U.S.C. § 120 ("An application for patent for an invention . . . , which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application . . . ."); *see also, e.g., Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998) (a continuation-in-part application relates back to its parent's filing date). Both the Golden Premier and the NAP products are considered prior art to the '488 patent because they were marketed in catalogs and trade shows and offered for sale to the public, before April 11, 2002. (*See* Troncoso Dec. ¶¶ 3, 7-17; Mizek Dec. ¶¶ 3, 7, 9-12).

In support of its motion, Bear Archery presents the Declaration of Vincent Troncoso, the Vice President of Research and Development at Golden Key Futura, Inc. from 1985-2005 and designer of The Arrow Holder; and the Declaration of Robert Mizek, the Director of Engineering for NAP. According to their testimony, when mounted, the Golden Premier Fall-Away rest and the QuikTune® fall-away arrow rest both support an arrow shaft and are capable of moving from a first lowered non-firing position to a second raised pre-launch position as the bow is drawn. (Troncoso Dec. ¶ 11; Mizek Dec. ¶ 8). The rests subsequently "fall-away" as the arrow is shot. (*Id*.). This actuation is caused in both cases by the rest being linked to the bow string, i.e., a linkage

member. (*Id.*). Bear Archery asserts that these teach the first, second, and fourth clauses of claim 25, namely:

> (1) a mounting member for coupling to a bow;
>
> (2) an arrow rest coupled to said mounting member and being movable relative thereto between a first resting position and a second position, said arrow rest configured for supporting a shaft of an arrow relative thereto and
>
> (4) a linkage mechanism coupled between said arrow rest and a cable of a bow for actuating said arrow rest between said first resting position and said second position.

According to Mr. Troncoso and Mr. Mizek, Golden Key and NAP also marketed and sold retaining products, namely "The Arrow Holder" and the "FastFlip®" Arrow Holder respectively, for use with any fall-away rest, including the above fall-away rests, prior to April 11, 2002. (Troncoso Dec. ¶¶ 5-8; Mizek Dec. ¶¶ 4-6, Ex. A). When the bow is drawn, these arrow holders flip up and away from the arrow shaft because they are biased in that direction by an elastic band (The Arrow Holder) or a spring (FastFlip®). (Troncoso Dec. ¶ 5; Mizek Dec. ¶ 4). Bear Archery asserts that these shaft retaining products teach the third clause of claim 25, namely:

> (3) at least one shaft retaining member coupled to said arrow rest and extending above the shaft of the arrow when said arrow rest is in said first resting position for preventing the shaft of the arrow from falling from said arrow rest when said arrow rest is in said first resting position, said at least one shaft retaining member being biased away from the shaft of an arrow.

Furthermore, Bear Archery submitted a claim chart, with references to Exhibits O and P[2], illustrating why Golden Key's demonstration bows set up with The Arrow Holder and a standard fall-away arrow rest anticipate each of the Asserted Claims of the '488 patent. Bear Archery also submitted a claim chart, with references to Exhibits O, P, Q and R, illustrating why the NAP FastFlip® Arrow Holder and its retail packaging, which includes a graphical representation of a standard fall-away arrow rest, anticipate each of the Asserted Claims of the '488 patent.

In his defense, Afshari presents the request for re-examination filed by NAP before the Patent and Trademark Office, in which NAP challenged the validity of the '488 patent based on four prior art patents: (1) U.S. Patent No. 5,161,514 (the "Cary" patent); (2) U.S. Patent No. 5,394,858 (the "Karolian" patent); (3) U.S. Patent No. 6,044,832 (the "Piersons, Jr." patent); and (4) U.S. Patent No. 6,595,195. (Re-examination Record at 5). The re-examination record reflects that, in order to overcome a rejection based on anticipation in light of Cary and obviousness in light of Karolian and Piersons, Jr., Afshari amended claim 25 of the '488 patent to recite, "said at least one shaft retaining member being biased away from the shaft of the arrow." (*Id*. at 482, 484). Based on that record, Afshari contends the Asserted Claims are valid because, had NAP believed its FastFlip® Arrow Holder constituted invalidating prior art, it would have submitted it as such during the re-examination proceedings. Afshari's speculative opinion regarding NAP's intent is not evidence.

---

[2] Bear Archery's Exhibits O and P are pictures of Golden Key's The Arrow Holder with an arrow rest affixed to a compound bow in a resting and drawn position, respectively. Bear Archery's Exhibits Q and R are pictures of the FastFlip® Arrow Holder in its retail packaging.

In the absence of any evidence to rebut the testimony of Mr. Troncoso and Mr. Mizek, the court finds that The Arrow Holder and FastFlip® Arrow Holder, in combination with a standard fall-away arrow rest, include each and every limitation of claim 25, and its dependent claims, as arranged in the claim.  Summary judgment that the Asserted Claims of the '488 patent are invalid as anticipated is **GRANTED**.  Having so found, the court need not address Bear Archery's alternative theory based on obviousness.

## II.     Conclusion

Bear Archery's Motion for Summary Judgment of Invalidity and Non-Infringement of U.S. Patent No. 6,948,488 and Infringement of U.S. Patent Nos. 7,159,325 and 7,343,686 (Docket # 104) is **GRANTED**. Bear Archery's trademark infringement and induced patent infringement claim against Afshari remain for trial.

**SO ORDERED** this 24th day of January 2014.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

Copy mailed to:

Abbas Ben Afshari
4950 Jennie Kate Lane
Lexington, KY  40610